## HAMILTON v. GANYARD.

September, 1866.

Affirming 34 *Barb.* 204.

Under an agreement to deliver corn "in good merchantable *order*," the seller is bound to deliver corn of a merchantable *quality*.

*It seems*, that this is the meaning of such a stipulation; which should not be confined to condition, but extends to quality; but if this is not so, there is an implied warranty of quality in an executory agreement to sell, which is not excluded by a stipulation as to condition.*

William Hamilton, assignee of Smith & Mathews, sued Enos Ganyard, in the supreme court, for damages in not delivering the corn contracted for in the following agreement: "$50. Received from Smith & Mathews, $50, on account of my crop of corn now growing on about 30 acres of ground, to be delivered to them in Rochester, in good merchantable order, any time after the first day of January next, and before the first day of May next, at fifty cents per bushel of sixty pounds. Dated Rochester, August 26th, 1858. ENOS GANYARD."

Plaintiff gave evidence to the effect that between the dates fixed in the contract defendant tendered a load of corn, under the contract, to Smith & Mathews, which they objected was wet and muddy, and declined to receive it, on the ground that it was not of merchantable quality. The defendant's evidence was to the effect that it was well cured and dry. Only about one quarter of it, however, was well ripened; the rest was not sound. There was also a conflict of testimony as to whether "merchantable order" includes unripe corn if clean and dry.

The crop was about forty-five bushels, and the market price on May 1, about seventy-five cents.

---

* Compare Rust v. Eckler, 41 *N. Y.* 488; Bartlett v. Hoppock, 34 *Id.* 118.

Hamilton *v.* Ganyard.

The judge instructed the jury, among other things, " that by the terms of the contract plaintiff was entitled to have the corn delivered in good merchantable order ; and that merchantable order meant the kind of corn that was called so in market, and did not mean soft corn ; that soft corn was not good merchantable corn, and that plaintiff was not bound to receive any corn except such as is described as good merchantable corn." To which defendant excepted.

Upon a verdict for plaintiff, judgment was entered.

*The supreme court* affirmed judgment, on the ground that the right claimed by defendant was to deliver the *whole* crop, three-fourths of which is conceded to have been of unmerchantable quality: tendering the good and bad together, was no tender or offer of performance, and the purchasers were not bound to receive the corn tendered, but might treat the contract as broken, and bring their action for damages sustained. Defendant appealed.

*James L. Angle*, for plaintiff, respondent ;—Submitted the case, relying on Reed *v.* Randall, 29 *N. Y.* 358.

BY THE COURT.—J. C. SMITH, J.—The construction of the contract adopted at the circuit is correct. The defendant agreed to deliver his then growing crop of corn, at a future day, in good, merchantable order. The term " good, merchantable order," as thus used, necessarily implies that the corn was to be of merchantable quality. In other words, the parties expressly bargained for a merchantable commodity. See Reed *v.* Randall, above.

But if, as the defendant insisted in the court below, the terms used related merely to the condition of the corn, and did not include its quality, then this implies an agreement that the corn bargained for should be of merchantable quality, as the contract was what is called executory. A contract of that nature always carries an obligation on the part of the vendor that the article to be delivered shall be, at least, salable ; at least of medium quality or goodness. 23 *Wend.* 350. Such implication is not repelled or limited, in the present case, by the express stipulation that the corn should be in merchantable order, if, as is

now assumed, that stipulation be held not to apply to the quality of the corn.

The single load of corn offered by the defendant was unmerchantable, and the plaintiff's assignors had a right to decline to receive it, as they did, on that ground. As the defendant subsequently declined to deliver the corn, because that load was not received, he was chargeable with a breach of the contract.

The measure of damages for such breach was the difference between the market value of the corn, at the time and place specified for its delivery, and the contract price, together with the sum paid by the purchaser, and interest thereon. That measure being applied, the evidence authorizes a recovery to the amount of the verdict.

The judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs, and ten per cent. damages.